# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-2912

———————

Barry M. Cornish,                      *
                                       *
　　　　　　Petitioner,                  *
                                       *   On Transfer from the United
　　v.                                  *   States District Court for the
                                       *   Western District of Missouri
Marion C. Blakey, Administrator of the *
Federal Aviation Administration, et al., *
                                       *
　　　　　　Respondents.                 *

———————

Submitted: February 14, 2003

Filed: July 18, 2003

———————

Before LOKEN,[*] RILEY, and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

The Federal Aviation Administration (FAA) issued an aircraft mechanic certificate to Barry Cornish. See 14 C.F.R. pt. 65, subp. D. Cornish submitted a urine specimen for the random drug testing required of "safety-sensitive" employees of regulated air carriers. See 49 U.S.C. § 45102(a); 14 C.F.R. § 121.457(a); 14 C.F.R. pt. 121, app. I, §§ III(E), V. The testing laboratory found the specimen adulterated.

———————

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

The FAA Administrator treated the adulteration as equivalent to refusing to be tested and revoked Cornish's mechanic certificate. See 49 U.S.C. § 44709(b)(1)(A); 14 C.F.R. § 65.23(b)(2) (authorizing revocation for refusing to submit to a drug test). Cornish appealed the revocation order to the National Transportation Safety Board (NTSB). During the administrative appeal proceedings, Cornish learned that the adulteration finding was based upon Department of Transportation (DOT) and Department of Health and Human Services (HHS) memoranda issued to drug-testing laboratories and medical review officers ("the adulteration memoranda").

Cornish then commenced this action in the district court against the FAA Administrator, the Secretary of Transportation, and the Secretary of Health and Human Services. Cornish claims that the adulteration memoranda are invalid because they were adopted without formal notice-and-comment rulemaking procedures, that the memoranda are arbitrary and capricious agency actions, and that revocation of his certificate based on invalid memoranda deprived him of his right to due process. The administrative appeal proceedings were stayed pending this lawsuit.

Concluding that the DOT memorandum was an agency order reviewable by a court of appeals under 49 U.S.C. § 46110, the district court transferred the entire action to this court under 28 U.S.C. § 1631.[1] Cornish does not appeal the district court's transfer order. Instead, he recasts all his claims as a petition for review under 49 U.S.C. § 46110. We dismiss the Secretary of Health and Human Services because

---

[1] 49 U.S.C. § 46110(c) gives the court of appeals "exclusive jurisdiction to affirm, amend, modify, or set aside any part of" an order of the FAA Administrator relating to aviation safety. 28 U.S.C. § 1631 permits a federal court lacking jurisdiction over "a civil action . . . or an appeal, including a petition for review of administrative action," to transfer the case to any court in which the action or appeal could have been brought at the time it was filed.

§ 46110 gives us no jurisdiction to review actions of that agency.[2] We dismiss the petition for review of actions of the FAA and DOT respondents because Cornish has not exhausted his available administrative remedies.

## I. BACKGROUND

The nitrite ion is the active ingredient in a widely available product designed to conceal the presence of drugs in a urine specimen. As the practice of nitrite adulteration spread, laboratories certified to conduct employee testing began to reject specimens that contained high nitrite concentrations. Because nitrite is found in normal urine at low concentrations, it is important to define an abnormally high concentration. HHS is responsible for promulgating guidelines for mandatory drug testing of federal employees. See Exec. Order No. 12564, § 4(d), 51 Fed. Reg. 32889, reprinted in 5 U.S.C. § 7301 note. DOT through the FAA is responsible for mandatory drug testing of the safety-sensitive employees of private air carriers. In 1994, the FAA classified "[a]dulteration of a urine sample" as a refusal to submit to a drug test. See 59 Fed. Reg. 62218, 62224 (Dec. 2, 1994). The two agencies then undertook to develop a scientifically sound policy for laboratories to follow in analyzing whether a urine specimen is adulterated.

On September 28, 1998, HHS issued Program Document #35 ("PD #35") to drug-testing laboratories. PD #35 stated that a urine specimen should be considered adulterated if analysis reveals a nitrite concentration equal to or greater than 500 micrograms per milliliter (µg/mL). That same day, DOT issued a memorandum ("the 1998 DOT memorandum") notifying Medical Review Officers (MROs), the doctors

---

[2]Though the HHS adulteration memoranda are not directly reviewable under § 46110, which is part of the federal transportation laws, the memoranda may come under indirect judicial scrutiny to the extent that DOT or FAA rely upon them in issuing an order that is reviewed under § 46110.

responsible for reporting drug test results to employers, that the recommendations in PD #35 would apply to FAA-mandated drug testing, and advising MROs to classify a laboratory finding of adulteration as a "refusal to test" when reporting test results. On July 28, 1999, HHS issued PD #37, the third memorandum challenged by Cornish. PD #37 provided laboratories further guidance for adulteration testing.

In November 1999, Cornish submitted a urine specimen that was found by the testing laboratory to contain a nitrite ion concentration of 2027µg/mL. The laboratory advised Cornish's employer that the specimen was adulterated, and the employer notified the FAA as required by law. The FAA treated the specimen as a refusal to test and revoked Cornish's mechanic certificate. The revocation order advised Cornish of the adulteration finding but did not cite the adulteration memoranda. Cornish appealed to the NTSB. The NTSB administrative law judge initially rejected Cornish's challenge to the emergency nature of the revocation order. See 49 U.S.C. § 44709(e)(3). During that stage of the administrative proceeding, Cornish learned that the FAA relies in part upon the 1998 DOT memorandum to support the revocation order.[3] He then commenced this facial attack on the validity of the adulteration memoranda and obtained a stay of the NTSB administrative appeal pending resolution of this lawsuit.

## II. DISCUSSION

Cornish argues that the 1998 DOT memorandum is facially invalid, without regard to its impact upon his pending administrative appeal of the FAA's revocation

---

[3]Effective August 1, 2001, DOT promulgated rules requiring adulteration testing and setting forth procedures to be followed by laboratories and MROs. See 49 C.F.R. § 40.91, 40.95, 40.97. This rule supersedes the 1998 DOT memorandum. See 65 Fed. Reg. 79462, 79463, 79479 (Dec. 19, 2000). New FAA regulations also classify adulteration as a refusal to submit to a random drug test. See 14 C.F.R. pt. 121, app. I § II (as amended Aug. 9, 2001). These rules were not in effect when Cornish submitted the urine specimen that led to his certificate revocation.

order. Cornish argues the 1998 DOT memorandum was a substantive rule and therefore was invalidly issued without notice and comment rulemaking. Respondents reply that it was an interpretive agency action to which rulemaking procedures did not apply. In addition to defending this agency action on the merits, respondents raise three threshold issues -- that Cornish lacks standing to challenge the adulteration memoranda, that his challenge is untimely, and that he failed to exhaust available administrative remedies.

Some cases have considered the question whether agency actions were substantive or interpretive rules. See Am. Min. Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993); U.S. Dep't of Labor v. Kast Metals Corp., 744 F.2d 1145 (5th Cir. 1984). But the issue must be raised in a proper procedural setting. The person attacking an agency action must have standing to seek judicial review, which includes the requirement that he or she suffered "injury in fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, Cornish was not even arguably injured by the 1998 DOT memorandum until the FAA relied upon it as a basis for revoking his mechanic certificate. That is the standing question. In addition, a party must seek timely judicial review of an agency action. Here, 49 U.S.C. § 46110(a) provides that a petition for judicial review of an order by the Secretary of Transportation must be filed "not later than 60 days after the order is issued," unless there are reasonable grounds for delay. Cornish filed this action in the district court long after DOT issued the 1998 adulteration memorandum. That is the timeliness issue.

Cornish argues the revocation order provides the requisite injury in fact. He argues that his delay was reasonable because his challenge did not ripen until the FAA relied upon the memorandum in the NTSB appeal process. Compare Hudson v. FAA, 192 F.3d 1031, 1034-35 (D.C. Cir. 1999) (petition for review was timely because FAA policy statement was not ripe for review when initially issued). Thus, although Cornish has attempted to frame this lawsuit as a facial challenge to the

adulteration memoranda, independent of his appeal of the certificate revocation order, his reply to respondents' standing and timeliness defenses demonstrate that the two proceedings are inextricably intertwined. Absent the revocation order, Cornish lacks the injury in fact necessary for Article III standing. Likewise, the revocation appeal proceedings provide the basis for his timeliness argument. In other words, Cornish's real complaint is with the adulteration memoranda *as applied* in his revocation proceeding. And that exposes the fatal flaw in this lawsuit -- to challenge the adulteration memoranda as applied, Cornish must first exhaust the administrative remedies Congress has provided to those injured by a certificate revocation order.

The general rule is that statutory administrative remedies must be exhausted before an aggrieved party seeks relief from the federal courts. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v.Madigan, 503 U.S. 140, 145 (1992). When the FAA Administrator revokes an aircraft mechanic's certificate, the mechanic may appeal to the NTSB, which may "amend, modify, or reverse the order." 49 U.S.C. § 44709(d)(1). This administrative appeal remedy was available to Cornish; indeed, his appeal to the NTSB is in progress before an NTSB administrative law judge. If the ALJ affirms the revocation order, Cornish may appeal to the full NTSB, which may affirm or reverse the ALJ, remand, or enter its own order "as the Board may deem necessary." See 49 C.F.R. §§ 821.43, 821.47, 821.49. If the NTSB ultimately upholds the Administrator's revocation order, Cornish may seek judicial review of the NTSB order under 49 U.S.C. § 46110. See 49 U.S.C. §§ 44709(f), 1133(1), 1153; see generally Reder v. Adm'r of FAA, 116 F.3d 1261, 1262-63 (8th Cir. 1997).

Cornish argues that he need not exhaust this administrative remedy because he alleges a due process violation. We rejected this contention in Delzer Constr. Co .v. United States, 487 F.2d 908, 909-10 (8th Cir. 1973), holding that a due process challenge to a Federal Highway Administration debarment order must await

exhaustion of the challenged administrative procedures. Likewise, at least two other circuits have held that NTSB appeal procedures must be exhausted before an aggrieved airman may seek judicial review of an allegedly unconstitutional revocation order. As the Seventh Circuit said in Gaunce v. deVincentis, 708 F.2d 1290, 1293 (7th Cir.), cert. denied, 464 U.S. 978 (1983), "[s]o long as effective means for judicial review are ultimately available where the constitutional claims can be raised, appellant may not dispense with the requirement of prior administrative review, otherwise judicial review would be an abstract process." Accord Robinson v. Dow, 522 F.2d 855, 857-58 (6th Cir. 1975). We agree with these decisions. We further note that Cornish's due process argument depends upon his argument that the adulteration memoranda are invalid. If the NTSB should conclude, for example, that the 1998 DOT memorandum was not validly applied in Cornish's case, or that his certificate would have been revoked regardless of the testing standards recommended to laboratories in the adulteration memoranda, his due process argument would likely become moot.

Though Cornish purports to challenge the facial validity of the adulteration memoranda, his arguments to this court make it clear that his real challenge is to the manner in which the 1998 DOT memorandum may have been applied by the FAA in revoking his mechanic certificate. Congress has provided administrative remedies by which Cornish may appeal that revocation order, but Cornish has not exhausted those remedies. Accordingly, the petition for review of the DOT and FAA agency actions is denied as premature. The petition for review of the HHS adulteration memoranda is dismissed for lack of jurisdiction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.