# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 21, 2025       Decided February 27, 2026

No. 24-1348

RYAN J. PAUL,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

———

On Petition for Review of an Order
of the Federal Aviation Administration

———

*Stephanie G. Spanja* argued the cause for petitioner. With her on the briefs was *M. Antonia Bird*.

*Jaynie Lilley*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the briefs were *Yaakov M. Roth*, Principal Deputy Assistant Attorney General, *Brett Shumate*, Assistant Attorney General, and *Courtney Dixon*, Attorney.

Before: CHILDS and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

GARCIA, *Circuit Judge*:   Federal law requires private airlines to conduct random drug testing of their pilots and to report any pilot's refusal to test to the Federal Aviation Administration (FAA).   A pilot's refusal triggers several immediate and significant legal consequences.

This case concerns whether the FAA, upon receiving such a report, must independently review an airline's determination that one of its pilots refused to test.  We hold that it must.  The FAA's internal guidance—the Drug and Alcohol Compliance and Enforcement Surveillance Handbook—plausibly requires such review.  And we read the Handbook to compel that procedural step because concluding otherwise—that is, concluding that the FAA has entirely outsourced those determinations to private employers without any meaningful form of review—would raise serious constitutional concerns.

Because the FAA concedes that it conducted no such review here, we hold that the agency arbitrarily and capriciously departed from its own procedures.

**I**

**A**

Congress has instructed the FAA to "promote safe flight of civil aircraft" by prescribing regulations "necessary for safety in air commerce."  49 U.S.C. § 44701(a)(5).  To that end, the FAA requires pilots to hold two certificates: a medical certificate and an airman certificate (also called a pilot certificate).  *See* 14 C.F.R. §§ 61.3(a), (c), 61.23(a).

Congress has also instructed the FAA to, "[i]n the interest of aviation safety," "prescribe regulations that establish a program requiring air carriers . . . to conduct . . . random . . .

testing of airmen . . . for the use of a controlled substance." 49 U.S.C. § 45102(a)(1). Accordingly, with some exceptions not relevant here, the FAA requires private airlines to conduct "random drug testing" on at least half of their "covered employees" annually. 14 C.F.R. § 120.109(b)(1). "[N]o part" of that testing "shall be conducted outside the territory of the United States." *Id.* § 120.123(a). And if a pilot "[f]ail[s] to appear for any test . . . within a reasonable time, as determined by the employer," the pilot is considered to have "refused to take a drug test." 49 C.F.R. § 40.191(a)(1); *see also* 14 C.F.R. § 120.7.

An employer must "notify the FAA within 2 working days of any covered employee who holds [a medical or airman certificate] who has refused to submit to a drug test." 14 C.F.R. § 120.111(d). Upon receiving such notice, the FAA's Drug Abatement Division opens an investigation. *See* Respondent's Brief 7; *see also* 49 U.S.C. § 44709(b)(1)(A). "[A]fter conducting" that "investigation," the FAA "may issue an order" to "suspend[]" or "revok[e]" the pilot's medical and/or airman certificates. 49 U.S.C. § 44709(b)(1)(A); 14 C.F.R. § 120.11(b)(2). If the FAA takes such an "adverse[]" enforcement action against the pilot's certificates, the pilot can appeal to the National Transportation Safety Board. *See* 49 U.S.C. § 44709(d).

Beyond the possible loss of the pilot's certificates, a test refusal carries several additional consequences.

First, a pilot who "refus[ed] to test" "cannot again perform DOT safety-sensitive duties for any employer until and unless [he] complete[s]" an "evaluation, referral, and education/treatment process." 49 C.F.R. § 40.285; *see also id.* § 40.191(c); 14 C.F.R. § 120.113(d)(4). This return-to-duty process involves an initial "evaluation" by a substance abuse professional, followed by "treatment," "education," "re-

4

evaluation," and "follow-up testing" as the substance abuse professional may require.  *See* 49 C.F.R. §§ 40.281–40.311.

Second, a test-refusal determination immediately prohibits the holder of a medical certificate from performing safety-sensitive duties until he also secures a new medical certificate that is issued "after the date of the . . . refusal to test."  14 C.F.R. § 120.113(d)(2), (4).  Relatedly, "[t]o be eligible for" a new medical certificate, the pilot must not have "refus[ed] to submit to a drug . . . test" "within the preceding 2 years."  *Id.* §§ 67.101, 67.107(b)(2), 67.201, 67.207(b)(2), 67.301, 67.307 (b)(2).

Third, "within 30 days" of "[t]he date of the [employee's] refusal to submit to testing," the employer must "report" such refusal to an FAA-run database called the Pilot Records Database.  14 C.F.R. § 111.220(a)(1), (c); *see also* 49 U.S.C. § 44703(i)(4)(B).  Prospective employers "shall access and evaluate" an individual's Pilot Records Database records "in deciding whether or not to hire the individual as a pilot."  49 U.S.C. § 44703(i)(1), (2), (9); *see also* 14 C.F.R. § 111.105. The Pilot Records Database is not publicly available.  *See* 14 C.F.R. §§ 111.1, 111.15.  And "[n]o" prospective employers "may retrieve records" therein "pertaining to any pilot prior to receiving that pilot's written consent."  *Id.* § 111.120(a).

**B**

Petitioner Ryan Paul was a pilot for Amerijet International, Inc., a cargo airline.  Amerijet, as required by law, conducts random drug testing on its pilots.

On March 20, 2024, Paul—off-duty at the time—was in Vietnam for a personal trip.  According to Paul, he had planned to return to his home base of Seattle by March 30, 2024, because Amerijet had scheduled him for duty the following

month. But he "was prevented from doing so due to a severe sinus infection." J.A. 61.

On April 2, 2024, Amerijet informed Paul that it had activated him for duty and selected him for a random drug test. Amerijet requested that Paul report for testing that very same day in Seattle. Paul—still in Vietnam—explained that it was impossible for him to do so. Amerijet then determined that Paul had refused a required drug test.

On April 4, 2024, Amerijet notified the FAA that Paul had refused to submit to testing. Five days later, Amerijet terminated Paul's employment. According to Paul, Amerijet also reported his test-refusal status to the Pilot Records Database.

The FAA, in turn, corresponded with Paul regarding Amerijet's report.

First, on April 5, 2024, the FAA's Drug Abatement Division sent Paul a letter, stating in relevant part:

> We are investigating information indicating you refused to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test directed by Amerijet International, Inc. on April 2, 2024. . . . The nature of this investigation is to determine whether you refused to submit to a DOT/FAA random drug test as reported to us and described above, and if so, what, if any, enforcement action should be taken.

J.A. 22. Through an attorney, Paul responded in writing that based on the "pertinent facts," he "did not refuse to submit to a DOT/FAA random drug test." J.A. 54.

Second, on August 27, 2024, the Drug Abatement Division sent Paul another letter, this time stating:

> We have concluded our investigation into your refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test directed by Amerijet International, Inc. on April 2, 2024. This correspondence is to inform you that we are not taking any legal enforcement action against you in connection with your refusal to submit to testing but have referred this matter to the FAA's Office of Aerospace Medicine. In accordance with 49 CFR § 40.285, an individual who refuses to submit to any DOT test cannot perform any DOT safety-sensitive duties for any employer until the individual has completed the Substance Abuse Professional (SAP) evaluation, referral, and education/treatment process, as required by 14 CFR Part 120 and 49 CFR Part 40, Subpart O.

J.A. 66. Paul urged the FAA to reconsider, again writing through his attorney that "the conclusion that Mr. Paul 'refused' to appear for a DOT/FAA random drug test was in error." J.A. 68.

Third, on October 24, 2024, the Drug Abatement Division emailed Paul's attorney the following message:

> As previously explained to Mr. Paul, in accordance with 49 CFR 40.355(i), refusal determinations are made by the employer. The FAA did not make a refusal determination regarding Mr. Paul's drug test. Our letter to Mr. Paul simply informed him that the FAA is not

pursuing legal enforcement action regarding this matter and noted the return-to-duty requirements in 49 CFR 40.285 for individuals who have refused to submit to DOT testing.

J.A. 76.

Paul then filed his petition for review in this court. He seeks an order (1) "vacat[ing]" the FAA's "finding" that Paul "refused to submit" to a drug test, (2) "affirm[ing] the FAA's determination not to seek enforcement action," (3) compelling the FAA to "remove all records reflecting" Paul's test-refusal status from the Pilot Records Database, and (4) directing "the FAA to advise Amerijet" Paul did not refuse a drug test "within the meaning of the DOT/FAA testing regulations." Petitioner's Brief 38–39.

**II**

As always, we begin with jurisdiction.

We have jurisdiction to review the FAA's August 27, 2024, letter as an "order" of the FAA. 49 U.S.C. § 46110(a). In that letter, the FAA assumed, without explanation, that Paul "refus[ed] to submit to testing." J.A. 66. That assumption "mark[ed] the consummation" of the FAA's "decisionmaking process" and "g[a]ve rise to legal consequences." *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007) (internal quotation marks omitted). This renders the order final and reviewable. *Id.*

Our jurisdictional inquiry does not end there. Although the FAA does not dispute Paul's Article III standing, we have "an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). To establish standing, Paul must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) a "causal connection between the injury and the conduct

complained of," and (3) a sufficient "likel[ihood]" that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). On a petition for review of agency action, Paul must support his standing "by affidavit or other evidence." *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).

There is ordinarily "little question" that a petitioner has standing when he is the "object of the action (or forgone action) at issue." *Sierra Club*, 292 F.3d at 900 (quoting *Lujan*, 504 U.S. at 561–62). So it is here. Paul claims future "economic damage from the loss of his first-class medical certificate for two years." Petitioner's Brief 19 (citing 14 C.F.R. §§ 67.101, 67.107). "Assum[ing]" Paul "will prevail on the merits," *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011), that injury stems from the FAA's failure to review Amerijet's test-refusal determination. And a favorable decision could redress this injury by mandating such review.

Paul has also shown that the risk of such economic damage is "sufficiently imminent." *Fair Emp. Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) (internal quotation marks omitted). The petition adequately conveys, with supporting evidence, that Paul intends to resume work as a pilot "in the reasonably near future." *Cf. id.* at 1274 (no standing for prospective relief when it was "highly implausible that [the plaintiffs] would ever return [to their employer] as *bona fide* job seekers"). Specifically, Paul's petition seeks relief to mitigate the "devastating *short . . .-term* impacts on his aviation career." Petitioner's Brief 35 (emphasis added). An exhibit attached to the petition shows that Paul had been a pilot—and had no employment outside aviation—since at least 2017. *See* J.A. 30. Paul's counsel, moreover, has represented that Paul has completed at least the initial steps of the return-to-duty process, a further indication Paul seeks to resume flight duties.

*See* Tr. of Oral Arg. 33; Petitioner's Post-Argument Letter 2; *see also* 49 C.F.R. § 40.285.

### III

Satisfied that we have jurisdiction, we turn to the merits. Paul, in essence, requests that we "set aside" the FAA's "finding" that he "refus[ed] to submit to testing" because the FAA "fail[ed] to explain the basis of its finding." Petitioner's Brief 15, 19–20. The FAA does not dispute its lack of explanation. Instead, the FAA claims that it "made no [such] factual finding" in the first place, and that the "factual determination is made by Paul's employer." Respondent's Brief 18. The pertinent question, then, has become whether the FAA erred by failing to act—that is, whether the FAA *must* review an employer's test-refusal determination.

It must. The parties point to no statutory or regulatory provision that directly addresses the question. But the FAA's internal guidance can be read to require FAA review of an employer's test-refusal determination. And that reading is necessary to avoid serious constitutional questions raised by the FAA's litigation position. We accordingly hold that the FAA arbitrarily and capriciously departed from its guidance by failing to review the test-refusal determination.

### A

Neither the relevant statutes nor regulations speak to whether the FAA must (or must not) review an employer's test-refusal determination.

Start with the statutes. The only potentially relevant statutory provision brought to our attention gives the FAA discretion to "delegate to a qualified private person" matters "related to" the "examination, testing, and inspection necessary to issue a [medical or airman] certificate." 49 U.S.C. § 44702(d)(1). It then allows persons "affected by an action of

a private person under this subsection" to "apply for reconsideration of the action by the Administrator." *Id.* § 44702(d)(3). But the parties agree that "[a]n employer's drug testing program is not a delegation relating to the issuance of certificates," and so Section 44702(d) does not "authorize[] the FAA to review the employer's report of refusal." Respondent's Post-Argument Letter 3; *see also* Petitioner's Post-Argument Letter 4 ("[W]e agree with the FAA that this provision applies to FAA-issued certificates and is inapplicable to the issues in this petition."). We assume without deciding that the parties are correct.

Next, the regulations. The FAA argues that two regulatory provisions—14 C.F.R. § 120.111(d) and 49 C.F.R. § 40.355(i)—make clear that the FAA will not review an employer's determination that an employee refused a drug test. *See* Respondent's Brief 19. We are not persuaded.

The first provision simply states that "[e]ach employer must notify the FAA within 2 working days of any covered employee who . . . has refused to submit to a drug test." 14 C.F.R. § 120.111(d). It says nothing about whether the FAA will review the employer's determination.

The second provision initially appears more promising for the FAA: As the FAA emphasizes, that provision states that, with exceptions not relevant here, making a test-refusal determination is "a non-delegable duty of the actual employer." 49 C.F.R. § 40.355(i). But the FAA utterly ignores the surrounding context. That regulation is explicitly directed toward "service agents," *id.* § 40.355, meaning a "person or entity, other than an employee of the employer, who provides services to employers and/or employees in connection with DOT drug and alcohol testing requirements," *id.* § 40.3. And it prohibits such service agents from "mak[ing] a determination that an employee has refused a drug or alcohol test," before

stating in the next sentence that "[t]his is a non-delegable duty of the actual employer." *Id.* § 40.355(i). Read in context, this provision establishes only that an employer cannot delegate its responsibility for making the initial test-refusal determination to service agents. It has no bearing on whether the FAA must (or must not) review the employer's determination.

**B**

Finding no answers in the statutes and regulations, we turn to the FAA's own internal guidance. One such guidance document—the Drug and Alcohol Compliance and Enforcement Surveillance Handbook—outlines procedures for the FAA's Drug Abatement Division "to follow when assessing drug . . . testing programs" for "compliance with" federal regulations. FAA, Order 9120.1E, *Drug and Alcohol Compliance and Enforcement Surveillance Handbook* ("Handbook"), at 1 (Apr. 1, 2023), https://perma.cc/E2HU-UJQD. The Handbook directs that "all program personnel must adhere to the procedures in this order," "[u]nless otherwise directed by the [Drug Abatement Division] Director." *Id.* Paul urges that the Handbook requires the FAA to review an employer's test-refusal determination. For the reasons below, we endorse Paul's reading.

Several features of the text support Paul's position.

First, the Handbook explains that "[t]he purpose of" the Drug Abatement Division's investigations "is to determine whether a finding of noncompliance exists and warrants the need for compliance action." Handbook at 53 ¶ 2. This language appears to assign the Drug Abatement Division two distinct responsibilities: (1) determining whether noncompliance (e.g., test refusal) exists, and (2) evaluating whether subsequent compliance action is warranted. The language is therefore difficult to reconcile with the FAA's argument that the agency is tasked only with "determin[ing]

what enforcement action . . . is appropriate," and not "with making a determination that an employee refused a drug test." Respondent's Brief 18–19.

Second, the Handbook repeatedly refers to employers' test-refusal reports as "allegations." *See* Handbook at 53–54 ¶¶ 1, 3(a), 3(f); *see also id.* at 53 ¶ 2 (stating that Drug Abatement Division investigations "pertain to *alleged* deviations of the drug . . . testing regulations" (emphasis added)). It would be quite strange to label an unreviewable conclusion an "allegation." That word connotes an unproven fact and, unlike other words the manual might have used (perhaps "determination" or "finding"), suggests further evaluation will occur. *See* Allegation, Black's Law Dictionary (12th ed. 2024) ("a statement, not yet proved").

Third, the Handbook states that "[i]nvestigations of an employee may only result in legal enforcement action or no action." Handbook at 55 ¶ 5. "[N]o action," when read in conjunction with the two aforenoted textual clues, plausibly reflects a review and rejection of an employer's "allegation." Indeed, courts frequently describe agencies' rejection of grievances after investigation as "no action." *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 490 (2022); *Kennedy v. Comm'r of Internal Revenue*, 142 F.4th 769, 772 (D.C. Cir. 2025).

Admittedly, although Paul's interpretation of the Handbook (to which the FAA curiously offers no response) is plausible, it rests on language that is far from unambiguous. Like the statutes and regulations, the Handbook does not say directly, one way or the other, whether the FAA will review an employer's test-refusal determination. But we need not decide whether Paul's is the best or only plausible interpretation of the Handbook. Per the constitutional avoidance canon, if one reading will raise "serious constitutional doubts" and another "plausible" reading will not, we will adopt the latter. *Clark v.*

*Martinez*, 543 U.S. 371, 381 (2005); *see also Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1438 (D.C. Cir. 1996) (applying the avoidance canon to the State Department's Foreign Affairs Manual "in light of the constitutional difficulties entailed by reading" it more broadly).

Here, the FAA's litigation position—that it is not required or even authorized to review employers' test-refusal determinations in these circumstances—raises serious constitutional concerns under the private nondelegation doctrine.

Generally, if the government delegates authority to a private entity, the government must "retain[] the ultimate authority to approve, disapprove, or modify" the private entity's "actions and decisions on delegated matters." *Hight v. DHS*, 135 F.4th 996, 1009 (D.C. Cir. 2025) (cleaned up); *see also FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025) (rejecting private nondelegation challenge because agency "retain[ed] decision-making power"). We have accordingly held that a Securities and Exchange Commission (SEC) "regulatory scheme" likely offended the private nondelegation doctrine by allowing the Financial Industry Regulatory Authority (a private corporation) to, "without any SEC review of its decision on the merits, effectively decide who can trade securities under federal law." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1328 (D.C. Cir. 2024), *cert. denied*, No. 24-904 (U.S. June 2, 2025). Likewise here, if the FAA is correct that it bears no responsibility to review private employers' determinations that their employees refused a government-mandated drug test, then those employers would effectively "decide who can" fly "under federal law" "without any [government] review of [their] decision[s] on the merits." *Id.*

The FAA attempts to distinguish *Alpine Securities* on the ground that the regulatory scheme here "does not grant private

14

[entities] any authority to impose disciplinary sanctions." Respondent's Supplemental Brief 11. On the FAA's telling, that is because "[i]t is the FAA, not the private air carriers, that ultimately determines whether to take enforcement action against a pilot's airman certificates." *Id.* at 12. But the FAA neglects the other consequences that flow directly from an employer's test-refusal determination. As this case illustrates, such a determination is reported to the Pilot Records Database for consideration by future employers, *see* 14 C.F.R. § 111.220(a)(1)(ii), and immediately bars a pilot from "perform[ing] a safety-sensitive duty" for any employer until the pilot completes the return-to-duty process and secures a new medical certificate, 14 C.F.R. § 120.113(d)(4). *See also* 49 C.F.R. § 40.285.

We emphasize that, in observing these "serious constitutional doubts," we do not resolve whether the FAA's position indeed violates the private nondelegation doctrine. *Martinez*, 543 U.S. at 381. We hold only that Paul's "plausible interpretation" of the Handbook should be adopted in light of the "constitutional difficulty" presented by the FAA's competing interpretation. *Id.* at 381, 384.

## C

Given our interpretation of the Handbook, we partially grant the petition for review on the basis that the FAA arbitrarily and capriciously departed from its own internal procedures.

We appreciate that the Handbook was not promulgated via notice and comment and would almost surely not qualify as a binding "legislative rule" under the various tests our caselaw sets forth. *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 357 (D.C. Cir. 2017). Nevertheless, this court and others have held that, in limited circumstances, "nonlegislative rules [may have] binding effect against an agency." Kristin E. Hickman &

Richard J. Pierce, Jr., Administrative Law Treatise § 4.3.2 (6th ed. 2019) (hereinafter Hickman & Pierce) (collecting cases). In particular, agency "[m]anuals or procedures may be binding on an agency when they affect individuals' rights." *Chiron Corp. & PerSeptive Biosystems, Inc. v. NTSB*, 198 F.3d 935, 944 (D.C. Cir. 1999) (collecting cases).

For example, in *Morton v. Ruiz*, 415 U.S. 199 (1974), the Supreme Court held that the Bureau of Indian Affairs, in denying a request for benefits, had unlawfully contravened a requirement in an "internally circulated" agency manual. *Id.* at 230, 235. The Court explained that "[b]efore the [agency] may extinguish the entitlement of . . . otherwise eligible beneficiaries, it must comply, at a minimum, with its own internal procedures." *Id.* at 235. Relying on *Ruiz*, this court has held that a requirement contained only in a memorandum of understanding between two agencies constrained the agencies' ability to revoke a conditionally-approved grant application. *Mass. Fair Share v. L. Enf't Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985). Other circuits have similarly held that internal agency rules are enforceable against agencies in limited circumstances. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). These cases typically involve "serious constitutional overtones." Hickman & Pierce § 4.3.2.

That approach is warranted here. As explained, we interpret the Handbook to *require* FAA review of private employers' test-refusal determinations. Declining to enforce that requirement against the FAA and leaving the test-refusal determination entirely to the discretion of private employers would raise severe constitutional concerns. Because the FAA concedes that it did not follow that requirement, we remand for the agency to follow its own procedures and conduct the necessary review. In doing so, we do not prescribe what

procedures the FAA must follow and instead leave that question to the FAA in the first instance.

Paul's petition for review also raises the subsequent issue of whether Amerijet *correctly* determined that Paul refused a mandatory drug test under federal law and, if not, what remedies the FAA may provide. *See* Petitioner's Brief 38–39. But because the FAA never reviewed Amerijet's test-refusal determination, "[i]t would not be proper for us to resolve that [issue] in the first instance." *City of Anaheim v. FERC*, 558 F.3d 521, 525 (D.C. Cir. 2009). Rather, the FAA "must address this issue in remand proceedings, in which it may consider and reasonably explain" its position on the merits of Amerijet's test-refusal determination. *Id.*[1]

---

[1] In closing, we note that the parties agreed that the FAA order issued here was not appealable to the National Transportation Safety Board under 49 U.S.C. § 44709(d). *See* Petitioner's Brief 36; Respondent's Brief 16, 20. That provision states that "[a] person adversely affected by an order of the Administrator under this section may appeal the order to the National Transportation Safety Board." 49 U.S.C. § 44709(d). And an order under "this section" is one "amending, modifying, suspending, or revoking . . . any part of a certificate issued under this chapter." *Id.* § 44709(b)(1). It is true that the FAA order we address here, by disclaiming any responsibility for reviewing whether Paul refused a drug test, had no impact on Paul's certificate. But *Amerijet's* test-refusal determination, by automatically prohibiting Paul from performing the safety-sensitive duties his medical certificate authorizes him to perform until he obtains a new certificate, *see* 14 C.F.R. §§ 61.53(a)(1), 120.113(d)(4), arguably did "amend[], modify[], suspend[], or revok[e]" "part" of Paul's certificate, 49 U.S.C. § 44709(b)(1). Once the FAA undertakes the review required by this opinion and substantively addresses Amerijet's test-refusal determination, the FAA's order will be responsible for any continued effect on Paul's certificate, and thus arguably would be appealable

**IV**

The petition for review is granted in part, and the case is remanded to the FAA for proceedings not inconsistent with this opinion.

*So ordered.*

---

to the Board.  Although we note this issue for the parties' benefit, we do not resolve it here.

RANDOLPH, *Senior Circuit Judge*, concurring:

I agree that the "order" on judicial review is the letter the FAA's Drug Abatement Division sent to Paul on August 27, 2024. The letter, quoted on page 6 of the majority's opinion, informed Paul that "we" would not take enforcement action against him, but, critically, it had consequences.

The FAA christens the Division's letter as a "No Action" letter. Given this description, one versed in federal administrative law would naturally think this is a routine exercise in prosecutorial discretion and thus immune from judicial review. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Citizens for Resp. & Ethics in Washington v. FEC*, 892 F. 3d 434, 439 (D.C. Cir. 2018). And yet the FAA does not invoke that doctrine. Why? The answer is that "No Action" is a misnomer, and the agency knows it. The FAA's announcement that it would not take enforcement action against Paul was not entirely passive. It triggered another FAA action adversely affecting him. This impact not only allows us to review the FAA's decision. It has striking implications for Paul's rights on remand which neither my colleagues nor the parties have considered. I write separately to discuss them.

The Division's letter to Paul was not only an "order," as my colleagues designate it, but more specifically, it was "an order amending, modifying, suspending, or revoking – any part of a certificate issued under this chapter [49 U.S.C. 44703]." 49 U.S.C. § 44709(b)(1). As such, Paul could have—and should have—appealed the letter-order to the National Transportation Safety Board. 49 U.S.C. § 44709(d). Such "appeals" consist of "some kind of hearing"[1] before an Administrative Law Judge, with no deference to the FAA's initial fact findings, and a potential review of the ALJ's

---

[1] *See* Henry J. Friendly, *Some Kind of Hearing*, 123 U. PA. L. REV. 1267, 1267-68 (1975).

decision by NTSB. *Id; see, e.g., Pham v. Nat'l Transportation Safety Bd.*, 33 F.4th 576, 579-80 (D.C. Cir. 2022).

Paul's counsel and counsel for the FAA apparently believe that the Division's August letter was not the type of "order" just described, and that Paul was therefore not entitled to a hearing before the NTSB. They are mistaken. The same fact that takes the letter out of the realm of prosecutorial discretion makes it appealable to the NTSB: The letter, by accepting his employer's refusal report, had an immediate impact on Paul's medical certificate.

FAA regulations establish that: "To be eligible for a first-class airman medical certificate, and to remain eligible for a first-class airman medical certificate, a person must meet the requirements of this subpart." 14 C.F.R. § 67.101. Another regulation, 14 C.F.R. § 67.107, lists the mental health requirements for eligibility including: "no substance abuse within the preceding 2 years defined as . . . a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation," 14 C.F.R. § 67.107(b)(2).

Focusing on the phrase "and to remain eligible," Paul complains that the FAA's decision to accept his employer's decision automatically revoked his medical certificate. What he does not appreciate is that on his view, the letter was an "order . . . revoking . . . a certificate" and thus was appealable to the NTSB pursuant to 49 U.S.C. § 44709(d). The FAA Division's letter itself states, consistent with the regulations quoted above, that: "In accordance with 49 CFR § 40.285, an individual who refuses to submit to any DOT test cannot perform any DOT safety-sensitive duties for any employer until the individual has completed the Substance Abuse Professional (SAP) evaluation, referral, and education/treatment process, as required by 14 CFR Part 120 and 49 CFR Part 40, Subpart O." J.A 66.

Put another way, the FAA's letter-order, by accepting and recognizing as final the employer's determination that Paul refused testing and thus rendering his certificate insufficient to permit him to perform security-sensitive duties, *modified* his medical certificate. Regardless of what label best fits, the fact remains that this letter impacted all or part of his medical certificate. 49 U.S.C. § 44709(b)(1), (d) (orders issued under "this section" include orders affecting "any part of a certificate issued under this chapter").

The letter-order clearly qualified as an appealable order pursuant to 49 U.S.C. § 44709(d). As such, I see no basis for my colleagues' construing the statutes, or the regulations, or the FAA's Handbook guidance, to avoid constitutional doubts.[2] The constitutional private non-delegation doctrine that so concerns my colleagues is not in play.[3] An appeal to

---

[2] "[T]he rule of 'construing' to avoid constitutional doubts should, in my view, be confined to cases where the doubt is exceedingly real. Otherwise this rule, whether it be denominated one of statutory interpretation or, more accurately, of constitutional adjudication – still more accurately, of constitutional nonadjudication – is likely to become one of evisceration and tergiversation." Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, in BENCHMARKS 211-12 (1967).

[3] There appears to a bit of "tergiversation" (*see* note 2) going on in the majority opinion, although, to its credit, the opinion acknowledges as much. Maj. Op. 14. The FAA Handbook does not say that the Division has the "responsibility" of "determining whether noncompliance (e.g., test refusal) exists." Maj. Op. 11. It says instead that the Division is to determine whether there has been a "finding" of "noncompliance." Handbook p. 53 ¶ 2. That is consistent with FAA's contention that it is entirely up to the employer to determine whether a pilot refused to be tested. So, this portion of the Handbook is not—as the majority opinion states— "therefore difficult to reconcile" with the FAA's position that the

the NTSB, which has the power to "approve, disapprove, or modify" the FAA's order, provided Paul with an administrative forum to litigate whether his private employer should have had the final say about whether he refused to be tested. *See Hight v. DHS*, 135 F.4th 996, 1009 (D.C. Cir. 2025); 49 U.S.C. § 44709(d)(3).

Despite my disagreement with the majority's opinion, I do not object to their remanding the case to the FAA. While I would prefer that we instruct the parties that Paul could appeal the letter-order without further ado, there can be no doubt that Paul will be entitled—and moreover required, *see e.g., Cornish v. Blakey*, 336 F.3d 749, 753 (8th Cir. 2003)—to appeal to the NTSB should the FAA endorse his employer's determination that he refused to undergo testing.

---

employer has the final word. Maj. Op. 11. Actually, it is quite easy to reconcile with the agency's position.